IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**CEDRIC JEFFERSON,**

    Plaintiff,

vs.                                                   Case No. 1:05cv127-MP/WCS

**CHAPLAIN NAIMAN,
CHAPLAIN MEDARIS, F. MOCK,
JIM WITT, and ALEX TAYLOR,**

    Defendants.

    _____/

## REPORT AND RECOMMENDATION

This is a suit brought by a state prisoner, a Hebrew Israelite, who wanted unleavened bread during the Passover in March and April, 2005. The five named Defendants in this case (Naiman, Medaris, Mock, Witt, and Taylor) filed a special report, doc. 30, presenting numerous arguments for granting summary judgment in their favor. However, the second argument asserted was that Plaintiff had not adequately exhausted administrative remedies as required by 42 U.S.C. § 1997e.[1]  Doc. 30, p. 9. Since the merits should not be reached if a claimant has failed to exhaust administrative remedies, Plaintiff was directed to address only that argument. Doc. 32. Plaintiff has

---

[1] As noted in the prior order, doc. 32, such an argument *should* have been presented in a motion to dismiss.

filed a response, doc. 34, and that aspect of the special report, construed as a motion for summary judgment, is ready for a ruling.

**The motion should be summarily denied**

Plaintiff wanted unleavened bread to observe Passover and the feast of unleavened bread meals in March and April, 2005.  Doc. 1, p. 8.  Defendants argue that while Plaintiff filed grievances *before* Passover seeking unleavened bread (without success), he did not file grievances complaining of the denial of unleavened bread *during* Passover, and therefore failed to exhaust his administrative remedies.

The argument is facially so frivolous that it should be summarily denied.  Surely Defendants do not really want prisoners filing grievances over and over again after a negative answer has been given.  A complete report and recommendation, however, will be provided.

**The allegations of the complaint**

Plaintiff alleges that he filed an informal grievance and also a letter to the chaplain concerning his request for unleavened bread.  Doc. 1, at 8-9.  After receiving an unsatisfactory response, Plaintiff filed a formal grievance.  *Id.*, at 9.  The formal grievance was denied, and Plaintiff filed an emergency grievance to the Secretary's Office.  *Id.*, at 9-10.  Plaintiff's grievance was not accepted as an "emergency" but he alleges it was entered as an administrative appeal.  *Id.*, at 10.

On March 30, 2005, Plaintiff and another inmate spoke with the Food Service Supervisor, Ms. Land, about Passover meals and unleavened bread.  *Id.*, at 10.  The next day, however, Plaintiff alleged that no substitute meal trays were provided to take the place of prohibited food products.  *Id.*  Plaintiff was told that the Chaplain had not left

Case No. 1:05cv127-MP/WCS

any instructions about the "meal provision or a place to worship." *Id.* For five days, Plaintiff states that neither he, nor some of the other Hebrew Israelite inmates, ate any meals from the dining hall.[2] *Id.*

On April 2nd, an Inspector spoke with inmate Ulysses Drakes about the Passover and feast of unleavened bread. *Id.*, at 11. This inmate told the Inspector, Sergeant Harris, that "most of the Hebrew Israelite inmates [had] not eaten anything out of the dining hall" and reiterated that the Chaplains had not taken steps to accommodate them. *Id.* On April 5th, Plaintiff also spoke with the assistant warden, Ms. Harvey, and the situation and advised that the Hebrew Israelite inmates had not eaten in five days. *Id.* She advised Plaintiff she "would check into the matter immediately." *Id.* Later that day, the Chaplain (Defendant Naiman) called Plaintiff and inmate Drakes to the chapel to discuss the problem. *Id.* Defendant Naiman arranged for vegetarian food trays to be given to the Hebrew Israelite inmates. *Id.*

On April 22, 2005, Plaintiff's formal appeal to the Secretary's Office was denied. *Id.*, at 11. The denial stated that food services does not "provide special meals for specific holy days of any faith." *Id.* Plaintiff then filed this action on July 29, 2005, asserting that Defendants Naiman and Medaris failed to accommodate the Hebrew Israelite inmates "with yeast-free trays at the beginning of the Passover and the feast of unleavened bread," which Plaintiff contends is a denial of his First Amendment rights and the "Religious Freedom Restroration [sic] Act." *Id.*, at 12. Plaintiff also includes a claim of "religious discrimination" against Defendants Naiman and Medaris. *Id.*

---

[2] Plaintiff states that the "High Holy Days are an eight (8) day observation." Doc. 1, p. 10.

Plaintiff asserts claims against Defendants Mock and Witt for refusing to investigate his formal grievance and for the subsequent denial of the grievance.  *Id.*, at 12.  Plaintiff claims they acted "despite their knowledge" that Plaintiff's right to the free exercise of religion was being violated.  *Id.*  Plaintiff claims Defendant Taylor's failure to accommodate the Hebrew Israelite inmates, while doing so for Jewish inmates, violates both his First Amended rights and his equal protection rights as guaranteed by the Fourteenth Amendment.  *Id.*  As relief, Plaintiff seeks a declaratory judgment, injunctive relief, and both compensatory and punitive damages.  *Id.*, at 13.

**Defendants' arguments concerning exhaustion**

Defendants argue that Plaintiff did not administratively grieve "what happened between March 30 and April 5, 2005."  Doc. 30, p. 10.  They assert that Plaintiff only grieved "**pre-holiday** requests for information regarding the preparation of religious foods."  *Id.* (emphasis in the original).  Thus, Defendants argue that because Plaintiff "did not exhaust grievances as to what occurred during the holiday" those unexhausted claims should be dismissed.  *Id.* (emphasis in the original).  In particular, it appears that Defendants seek dismissal of "Plaintiff's claim of being denied a vegan meal pattern at the beginning of the Passover and Feast of Unleavened Bread . . . ."  *Id.*, at 13.

**Grievances**

Plaintiff attached the relevant grievances to his complaint.  Doc. 1.  Exhibit A is an inmate request form, which is not part of the grievance process, but it should be noted that Plaintiff sought information as to whether the Hebrew Israelite inmates would be served food without leaven in it during the upcoming Passover and feast of unleavened bread.  The response to that request from Chaplain Medaris cryptically

states: "The Department of Corrections is in formal agreement as to what food provisions will be adherred [sic] to as in the court order Lawson v. Dugger concerning Hebrew Israelites."  Ex. A.  A yes or no answer would have been helpful.

Exhibit B is Plaintiff's informal grievance, dated January 28, 2005, in which he states that the issue he is grieving is "refusing to answer [his] request on whether or not the dining hall staff is going to prepare a Passover and unleavened bread for the Hebrew Israelites."  Doc. 1, ex. B.  Plaintiff states that Hebrew Israelite inmates are required to eat unleavened bread during the Passover and the seven days following.  *Id.*  The response again side-stepped the question: "The Department of Corrections is in formal agreement as to what food provisions will be adherred [sic] to as it concerns Hebrew Israelites as in court order Lawson v. Dugger."  *Id.*

Exhibit C is the formal grievance in which Plaintiff stated that the response he received did "not correlate to the allegations of" his grievance.  Doc. 1, ex. C.  Plaintiff states that he is grieving the fact that his request is not answered and states the response "was about some religious materials; Lawson v. Dugger, 897 F.2d 836."  *Id.*[3]  Plaintiff states again that the feast of unleavened bread "immediately follows Passover and last [sic] seven days, and during these seven days, we are required to eat unleavened bread."  *Id.*  The response, signed by Defendants Mock and Witt, states that after an investigation into the matter, Plaintiff's informal grievance was answered by

---

[3] Lawson v. Dugger, 897 F.2d 536 (11th Cir. 1990) (table) is an unpublished opinion.  It is one of several decisions in that case which involved a Department of Corrections rule that regulated possession of Hebrew Israelite literature; it did not involve a claim concerning unleavened bread.  Lawson v. Singletary, 85 F.3d 202 (11th Cir. 1996).

Chaplain Medaris and was found to have "adequately addressed the issues and/or concerns." *Id.*

Exhibits D is a letter to Plaintiff, dated February 10, 2005, from Defendant Alex Taylor, the Chaplaincy Service Administrator. Doc. 1, ex. D. Defendant Taylor states that he reviewed a letter from Plaintiff and had spoken with Chaplain Medaris. *Id.* He advised that the "Department of Corrections does not provide religious food for inmate religious meals." *Id.* Further, Defendant Taylor stated that Chaplain Medaris was "maintaining the standards of provision for Hebrew Israelites as agreed upon in the lawsuit." *Id.* He suggested that Plaintiff "speak with Chaplain Medaris about donated food as there are usual institutional protocols governing that." *Id.*

Exhibit E contains Plaintiff's grievance to the office of the Secretary of the Department of Corrections. Doc. 1, ex. A. Plaintiff asserts that his grievance concerns "the Hebrew Israelites' Passover and feast of unleavened bread meals, which specific meals should be accommodate [sic] to us on March 31st, 2005 - through - April 7,th, 2005." *Id.* Plaintiff states that he had exhausted all administrative remedies and seeks further review of the matter before the start of the high holy days. *Id.* Plaintiff also argued that the responses he had previously received to his formal and informal grievances "did not adequately address [his] issues on whether the" dining hall would prepare unleavened bread for the Hebrew Israelites, or whether the Chaplain would direct food service to provide substitute trays . . . ." *Id.* Plaintiff also argued that officials at Mayo Correctional Institution discriminate because other religions are accommodated with their needs and the chaplains provide memos in advance concerning those preparations. *Id.* Plaintiff also stated in that "emergency grievance" that the Chaplain's

memorandum for the Hebrew Israelites states only that the Passover and feast of unleavened bread begins on March 31, 2005, and continues through April 7, 2005, but the Chaplain fails to address the food service issue. *Id.*

On March 17, 2005, a memorandum response was provided to Plaintiff on his "emergency grievance." Doc. 1, ex. E. Plaintiff was advised that his appeal had been received and, after review, "it was determined it should not be accepted as an appeal of an emergency nature." The response, however, went on to state that "[a]ppropriate action [would] be taken with regards to the appeal [Plaintiff] submitted . . . and a response [would] be provided to" Plaintiff. *Id.* A hand-written note on the bottom of the memo stated: "We are referring your grievance appeal packet to the Bureau of Chaplaincy Services." *Id.*

On April 15, 2006, (after the Passover celebration was concluded), a response was mailed to Plaintiff from the Department of Corrections Bureau of Inmate Grievance Appeals. Ex. E. The response, which denied Plaintiff's administrative appeal, stated that the complaint had been referred to Alex Taylor, Chaplaincy Service Administrator, who "advised that the response provided at the institutional level appropriately addresses the concerns" Plaintiff raised. *Id.* It concluded by stating, "Food service's records indicate that they do not provide special meals for specific religious holy days of any faith." *Id.* Further, it advised that Plaintiff could choose the "alternate" meal "during the dates of the Holy Days in question." *Id.*

**Plaintiff's response, doc. 34**

In response to Defendants' summary judgment motion, doc. 30, Plaintiff "contends that there is no provision in the Florida [Administrative] Code or the grievance

Case No. 1:05cv127-MP/WCS

procedure" which allows an inmate to "continue" a complaint that was already pending in the Secretary's office. Doc. 34, p. 2. Plaintiff states that he had already submitted an inmate request and an informal grievance and a formal grievance at the time of the holy days. *Id.* Furthermore, Plaintiff states that he clearly pointed out before the beginning of Passover that food service was not accommodating his and the other Hebrew Israelite inmates' request. *Id.* In other words, Plaintiff submitted grievances "in connection with his claim[s] to advoid sic] any violation of his constitutional rights, so what occurred between March 31st and April 5th, 2005 were the results of the defendants denying plaintiff's religious dietary need." *Id.*, at 4-5.

**Analysis**

As noted by Defendants, § 1997e provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must give prison officials "fair notice" of the substance of his or her claim so that prison officials have an opportunity to correct an alleged wrong prior to judicial redress being sought. *See* Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons).

It is obvious that Plaintiff exhausted all levels of the prison grievance system. There is no dispute on that point. Defendants, however, contend that Plaintiff only grieved the "pre-holiday" requests for information and not "what occurred <u>during the</u>

holiday." That argument is seriously flawed. Plaintiff alerted prison officials to a situation that would soon arise, and one that he believed would violate his constitutional rights if no action were taken. Having unsuccessfully sought to obtain advance approval of meals with unleavened bread, it makes little sense to demand that Plaintiff return to the grievance process simply to tell prison officials that what they had decided in advance to deny had in fact been denied. Indeed, had Plaintiff grieved again as Defendants suggest (grieve "what occurred during the holiday"), he would have been told that his question had been asked and answered.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 30, be **DENIED in part,** and the Court should find as a matter of law that Plaintiff exhausted administrative remedies as required by 42 U.S.C. § 1997(e), and this case be **REMANDED** for further proceedings on the special report.

**IN CHAMBERS** at Tallahassee, Florida, on October 27, 2006.


 s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 1:05cv127-MP/WCS