**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION**

**CEDRIC JEFFERSON,**

**Plaintiff,**

**vs.** **Case No. 1:05cv127-MP/WCS**

**CHAPLAIN NAIMAN, et al.,**

**Defendants.**

**_____________________________/**

## SECOND REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, initiated this action in July, 2005, by filing a civil rights complaint under 42 U.S.C. § 1983. Doc. 1. Plaintiff is a Hebrew Israelite prisoner who is challenging the denial of certain religious dietary items for Passover, the Feast of Unleavened Bread, and the observation of the High Holy Days. Doc. 1. Service was directed in late December, 2005, doc. 13, and the Defendants responded by filing a special report, doc. 30.

The special report presented numerous grounds to support the assertion that summary judgment should be entered in their favor. The second defense was that Plaintiff had not exhausted administrative remedies as required by 42 U.S.C. § 1997e.

That defense was considered separately and was resolved in Plaintiff's favor. Doc. 40 (report and recommendation) and doc. 46 (order adopting report and recommendation).

The remainder of the special report was construed as a summary judgment motion, doc. 49, and is now ready for a ruling. Plaintiff was advised of his obligation to respond, and his response, doc. 56, along with the supporting declaration, doc. 57, have been considered.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id*. An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**Plaintiff's claim**

Plaintiff, a prisoner at Mayo Correctional Institution, is a Hebrew Israelite. Hebrew Israelites celebrate a Passover and Feast of Unleavened Bread, a period each year of about eight days beginning at the end of March. Doc. 1, pp. 8, 10, and Ex. B. Plaintiff asserts that during those days, Hebrew Israelites "are prohibited to eat or touch leaven (e.g. baking soda, breads, pastries, or any items that contain yeast or cream of tartar, and all ingredients used to make batter and dough rise)." *Id*., p. 10. Plaintiff seeks a "yeast-free," that is, a vegetarian food tray during those days. *Id*., pp. 12-13.

**Defendants' arguments**

The remainder of the special report (other than the issue of failure to exhaust administrative remedies) presents the following arguments for entering summary judgment in their favor: (1) Plaintiff's request for compensatory and punitive damages is barred by § 1997e(e); (2) Plaintiff fails to demonstrate a violation of his civil rights; (3) Defendants are entitled to qualified immunity; (4) Defendants are protected by Eleventh

Amendment immunity from an award of monetary damages against them in their official capacities; and (5) Plaintiff is not entitled to injunctive relief because Plaintiff received appropriate substitute meals in 2006 and the issues are moot. Doc. 30. These will be addressed in the order presented.

**The relevant Rule 56(e) evidence**

Plaintiff entered the custody of the Florida Department of Corrections on January 22, 2001, with a life sentence. Doc. 30, p. 2; exhibits A, B. Plaintiff was transferred to Mayo Correctional Institution on August 30, 2004. On September 29, 2004, Plaintiff changed his Religious Preference from Islam to Hebrew Israelite. Doc. 30, p. 2; exhibits B, C.

In January, 2005, Plaintiff submitted inmate requests and grievances seeking to know in advance whether Hebrew Israelite inmates could celebrate Passover together and have an unleavened meal and unleavened bread for the seven days of the Feast of Unleavened Bread. Doc. 30, pp. 2-3; Defendants' exhibits D, E. Plaintiff sought a place to gather together on Passover eve in the chapel to pray and to eat dinner together after fasting. Exhibit D. The response to Plaintiff's inmate request simply stated that whatever accommodations might be made would "be in accordance to direction from Tallahassee." *Id.*

Plaintiff filed an informal grievance on January 28, 2005, and again asked whether officials were "going to prepare" a Passover meal and have "unleavened bread for the Hebrew Israelites." Exhibit E. Plaintiff's informal grievance also advised prison officials that the "Feast of Unleavened Bread immediately follows the Passover and lasts seven days . . . ." Doc. 30, p. 4; Ex. E. Plaintiff "indicated that prohibited food

would include food with 'baking soda, breads, pastries, or any items that contain yeast or cream of tartar; and all ingredients used to make batter and dough rise." *Id.* The response to that grievance from Chaplain Medaris states: "The Department of Corrections is in formal agreement as to what food provisions will be adherred [sic] to as it concerns Hebrew Israelites as in court order Lawson v. Dugger." Exhibit E. Lawson v. Dugger, 844 F.Supp. 1538 (S.D. Fla. 1994) was a class action concerning Hebrew Israelite prisoners. Relevant to this case, the court there held that "the Hebrew Israelite faith shall be recognized as a bona fide religion by the Florida Department of Corrections" and the Department must "afford all requesting inmate members of the class a pork-free diet upon request." 844 F.Supp. at 1545-1546.

It is undisputed that Plaintiff's early requests to be provided an unleavened meal for these holy days were denied. Doc. 30, pp. 4-7. Plaintiff sent a letter to the Chaplaincy Service Specialist at the Department of Corrections' Central Office, and the response advised that the "Department does not provide religious food for inmate religious meals." Exhibit G-2; doc. 30-3, p. 2. The response suggested that Plaintiff might "want to speak with Chaplain Medaris about donated food as there are usually institutional protocols governing that." *Id.* That suggestion followed this comment: "In speaking with Chaplain Medaris I am convinced that he is maintaining the standards of provision for Hebrew Israelites as agreed upon in the lawsuit." *Id.*

Plaintiff provided his own affidavit as evidence to support his claims and in opposition to Defendants' summary judgment motion. Doc. 57. Plaintiff acknowledges that when he asked Defendants Naiman and Medaris about whether an unleavened meal would be prepared for Passover and the Feast, Plaintiff was told there was no

such provision for Hebrew Israelite inmates, only a pork-free diet. *Id.* Plaintiff began submitting inmate requests to officials he believed were "responsible for organizing religions practice observations." *Id.* When that was unsuccessful, Plaintiff then sought assistance through the grievance process, again to no avail. *Id.*

On March 30, 2005, Plaintiff and inmate Drakes spoke with Ms. Land, a food service supervisor at Mayo Correctional Institution, about food provisions for Hebrew Israelite inmates. *Id.*, at 2. She reviewed the "special diet/faith-meal binder and searched for such provision for the Hebrew Israelite faith." *Id.* She advised Plaintiff that there were no meal provisions for that religion, but there was "one meal provision for the" Jewish Passover. *Id.* Plaintiff avers that he and inmate Drakes "informed Ms. Land that that meal provision memoranda applies to the Hebrew Israelite inmates, too, since both religion follows [sic] the same tradition a little." *Id.*, at 3. Ms. Land told Plaintiff and inmate Drakes that they "would not be allowed to receive yeast-free trays unless the Chaplain or Assistant Warden over program approves of it." *Id.* Ms. Land also told Plaintiff that Hebrew Israelite inmates could receive "alternate trays (non-meat trays) during the Passover and Feast of Unleavened Bread." *Id.* Plaintiff objected to the offer because the "alternate trays still contain products with leaven (yeast), like bread, cakes, cookies, and breaded meat loaf." *Id.*

On March 31, 2005, the beginning of Passover, Plaintiff was not called to report for a Passover meal, nor was any other Hebrew Israelite inmate called for a Passover meal. *Id.* Plaintiff was not aware of any memoranda that were posted at the Institution concerning special religious meals for Hebrew Israelite inmates. *Id.* Furthermore, no

religious meals or substituted trays were given to Plaintiff or the Hebrew Israelite inmates to take the place of prohibited food products. *Id.*

Plaintiff went to the dining hall the following morning, April 1, 2005, to receive a "yeast-free tray, but a food service worker told [Plaintiff] that [his] name was not on the vegan tray's list." *Id.*, at 3. Plaintiff did not accept a "regular alternate tray" and left without eating. *Id.*

Later that day, Plaintiff and inmate Drakes questioned Defendant Naiman about meal provisions for Hebrew Israelite inmates. *Id.* He advised them that Defendant Medaris "did not leave any instruction concerning meal provision of a place to worship." *Id.* Plaintiff asked how they could "eat without defiling [their] religious" beliefs, but Defendant Naiman said he did not know. *Id.*, at 4. Inmate Drakes then requested that Defendant Naiman "call food service and request" vegan food trays for the Hebrew Israelite inmates. *Id.* Defendant Naiman said he did not have time and told them to talk to Defendant Medaris about the matter. *Id.*

Plaintiff avers that he did not even "bother to go to the dining hall" on April 2nd or 3rd. *Id.*, at 4. Plaintiff "ate dry noodles and [drank] water to keep [up his] strength, sanity, and religious belief." *Id.* When he awoke on April 4th, Plaintiff felt "light-headed and discombulated [sic]." *Id.* Before Plaintiff went to see the psychiatrist, inmate Drakes gave him some plain peanuts and told him everything would "be alright." *Id.* Plaintiff went to the psychiatrist "feeling totally" distressed. *Id.* After the session ended, while Plaintiff was walking back he saw the assistant warden over programs, Ms. Harvey, and "approached her with [his] problem." *Id.* "She was in disbelief" of the situation, threatening to lock up Plaintiff if he was lying, and told him "she would check

into the matter immediately." *Id.* Later that same day, April 4th, Defendant Naiman called Plaintiff and inmate Drakes to the Chapel. *Id.*, at 5. After Plaintiff advised that he and other Hebrew Israelite inmates had "not eaten out of the dining hall since the 31st of March, 2005, he called food service and arranged vegan trays "for most of the Hebrew Israelite inmates we could have named off our head . . . ." *Id.* Plaintiff had vegan meal trays for the "remaining days of the Feast of Unleavened Bread." *Id.*

The Department of Corrections states as official policy that it provides an "alternate entree" meal to inmates. Doc. 30, p. 7; *see* Exhibit I. It is unclear whether this policy existed in 2005. This meal is described as "the substitute of non-meat entree offered at meals and the vegan (total vegetarian) meal pattern." Doc. 30, p. 7; Exhibit I (FLA. ADMIN. CODE 33-204-003(5)). It is designed as an option "for inmates whose religions require a pork-free, lacto-ovo or lacto-vegetarian diet." *Id.*; *see also* Exhibit J. Defendants also advise that the vegan meal plan is an option "for the religious requirements of inmates who choose to avoid all animal products." *Id.* Inmates can request a vegan meal plan by submitting an Inmate Request form. *Id.* The policy does not state whether any of these meals are free of leavening.

The Department of Corrections has a Chaplaincy Guide dated December 4, 2004, for the various religious groups making up the inmate population. Doc. 30, pp. 7-8. This Guide has a section on the Hebrew Israelite faith providing that Hebrew Israelite inmates "must be allowed to choose the alternate entree to meet his/her religious dietary requirements and the minimum dietary requirements." *Id.*, at 8; *see* Exhibit K. The Guide also states the following as it pertains to Passover and the Feast of Unleavened Bread:

> For the symbolic, ceremonial passover meal chaplains should speak to their local Food Services regarding the availability of lettuce, vinegar and unleavened bread. If these products are not available the Passover ceremony should still be observed.
>
> Passover Day is a work proscription day as is the first and last days of the [F]east of Unleavened Bread.
>
> Note: If at all possible, leavened products should not be placed on the food tray of Hebrew Israelite inmates.

Doc. 30, p. 8; Exhibit L.

On March 30, 2006, Defendant Medaris prepared a memorandum to the director of food service concerning the 2006 Hebrew Israelite Passover and Feast of Unleavened Bread. Doc. 30, pp. 22; ex. O. The memo advised of the holy days for Hebrew Israelite followers and had attached, "a recipe for unleavened bread, if" the director desired to use it. Exhibit O. The names of Hebrew Israelite inmates were provided on an attached list for placement on either the vegan or alternate meal if the inmates so desired. *Id.* Another chaplain, also at Mayo Correctional Institution, Chaplain Giddons, issued a memorandum on March 21, 2006, concerning the Passover and Feast of Unleavened Bread. This memorandum advised that period from March 31, 2006, to April 7, 2006, was "Passover and the Feast of Unleavened Bread for Hebrew Israelites." Exhibit P. The memo noted that during this week, Hebrew Israelite inmates could choose between an "alternate entree or a Vegan tray." Doc. 30, p. 22, ex. P.

**Legal analysis**

**Whether Plaintiff's damages claims are precluded**

"Section 1997e(e) states that: 'No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.' " Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002), *rehearing en banc denied*, 331 F.3d 1189 (11th Cir. 2003), *cert. denied*, 540 U.S. 1112 (2004); Boxer X v. Harris, 437 F.3d 1107, 1111 n. 3 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 1908 (2007). Therefore, Plaintiff cannot obtain compensatory or punitive damages for mental or emotional injury, standing alone. That restriction holds true even in a First Amendment case such as this where the injury will almost always be only mental or emotional. *See* Geiger v. Jowers, 404 F.3d 371, 375 and n. 11 (5th Cir. 2005) (citing cases); Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000). Although Plaintiff stated in his complaint that he sought compensatory damages "for the physical and emotional injuries sustained as a result of the plaintiff not eating in five days," Plaintiff has presented no Rule 56(e) evidence of any physical injury. The statute does not necessarily preclude Plaintiff from recovering nominal damages, *see* Hughes v. Lott, 350 F.3d 1157, 1162-63 (11th Cir. 2003), but there is no prayer for nominal damages and none should be read into this complaint.[1] Plaintiff's requests for compensatory and punitive damages are precluded. Consequently, summary judgment should be granted in favor of Defendants as to this issue.

---

[1] Plaintiff requests "such other relief as it may appear that plaintiff is entitled," doc. 1, p. 14, but this is not read as a request for nominal damages.

**Whether Plaintiff demonstrates Constitutional violations**

Defendants contend that Plaintiff has not shown that a "substantial burden" was placed on the exercise of his religious beliefs. Doc. 30, pp. 13-14. Defendants assert that Plaintiff could have had his religious dietary needs met through requesting the vegan diet and "possibly" through "the non-meat entree (provided that leavened products are not placed on the non-meat tray) as identified" in the Chaplain's Technical Guide. *Id.*, at 14, *see* Exhibit L. Defendants contend that Plaintiff could have requested either of those meal plans and that his grievances "were not enough to give the Defendants notice that Plaintiff specifically desired the vegan meal pattern." *Id.*, at 14-15. Defendants also contend that Plaintiff fails to establish an equal protection claim because he does not allege facts "sufficient to establish that Defendants' actions reflect invidious discrimination" or that similarly situated fellow inmates were treated more favorably. Doc. 30, p. 15.

**First Amendment**

The First Amendment, made applicable to the States through the Fourteenth Amendment, "safeguards the free exercise of [one's] chosen form of religion." Cantwell v. State of Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940). A threshold issue is whether one has been substantially burdened in his religious practice. In Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214(11th Cir. 2004), the Eleventh Circuit relied upon prior Supreme Court case law to define "substantial burden." The court cited Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988), indicating a substantial burden exists where regulation has "a tendency to coerce individuals into acting contrary to their

religious beliefs," Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987), finding substantial burden when government put "substantial pressure on an adherent to modify his behavior and to violate his beliefs," and Sherbert v. Verner, 374 U.S. 398, 404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), finding a substantial burden when an individual is required to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other." Midrash Sephardi, Inc., 366 F.3d at 1226.

Considered in a light most favorable to Plaintiff, the evidence shows he was forced to choose between going without food or violating his sincerely held religious beliefs during the Passover and Feast of Unleavened Bread by eating from a food tray containing leavened food products. Plaintiff chose to not eat for some four or five days. The evidence shows that on March 30, 2005, Plaintiff spoke with Ms. Land, a food service supervisor, about food provisions for Hebrew Israelite inmates. She told Plaintiff there were no provisions for his faith. When he asked to have the same meal as given for the Jewish Passover, he was told he could not receive those meal trays unless the Chaplain or Assistant Warden approved it. Plaintiff has presented evidence that Chaplain Naiman (a Defendant) would not speak up on his behalf and request the vegan food tray. Plaintiff was offered the "alternate trays (non-meat trays)," but he declined because those trays would "still contain products with leaven" which he is forbidden to eat.

Defendants argue that at the time Plaintiff was given the vegan meal pattern, he had not made that request previously. Doc. 30, p. 14. Defendants also contend that

Plaintiff's grievances "were not enough to give the Defendants notice that Plaintiff specifically desired the vegan meal pattern." *Id.*, at 15.

Those arguments are not well taken and, furthermore, are disputed by Plaintiff's affidavit, doc. 57. Plaintiff has shown that he sought unleavened bread well before Passover in his grievances. Those grievances were denied. Plaintiff's initial informal grievance states that his request had not been answered as to "whether or not the dining hall staff is going to prepare a Passover and unleavened bread for the Hebrew Israelites." Doc. 30, ex. E. Plaintiff explained what products he could not eat. The response, however, was cryptic, that the Department was in "formal agreement as to what food provisions will be adherred [sic] to as it concerns Hebrew Israelites." *Id.* That ignored the issue of Plaintiff not having received an answer to his request, and still did not answer his question as to whether he would be provided food without leavening. Plaintiff informed prison officials of the types of meals that would comply with the dictates of his faith. He was never told that the vegan tray would not contain leavening and thus would satisfy his religious needs. Indeed, it is still unclear whether that is so, though it must be so since Plaintiff eventually agreed to accept the vegan tray. Further, on March 30, 2005, when Plaintiff attempted to receive the meal provided to Jewish inmates but was denied, Ms. Land told Plaintiff to have the Chaplain request the appropriate meal tray. When Plaintiff sought help from Defendant Naiman, Plaintiff avers that Chaplain Naiman told Plaintiff he did not have time to request a vegan tray for Plaintiff. Accordingly, considered in a light most favorable to Plaintiff, the evidence shows a triable issue as to whether Plaintiff's free exercise of religion was substantially

burdened by Defendants in 2005 during the Hebrew Israelite Passover and following feast days.

Ordinarily, this would not be the end of this court's analysis. Prison regulations that substantially burden the free exercise of religion may nonetheless be upheld if "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 340, 350, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987) *applying* Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). "A prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000), *cert. denied*, 532 U.S. 932 (2001). But the Turner issues[2] are not before the court on this motion for summary judgment. Defendants have not come forward with evidence to show how the denial of meals without leavening during the Hebrew Israelite holy days was "reasonably related to legitimate penological interests." Consequently, Defendants' motion for summary judgment on the merits of the First Amendment claim should be denied.

[2] There are four factors: "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Turner, 482 U.S. at 89, 107 S. Ct. at 2262 (citation omitted). The court must also consider: "(2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) 'the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and (4) whether there are 'ready alternatives' available 'that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.'" Spies v. Voinovich, 173 F.3d 398, 403 (6th Cir. 1999), *quoting* Turner, 482 U.S. at 90-91, 107 S. Ct. 2254.

**Equal protection**

"To establish an equal protection claim, a prisoner must establish that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-947 (11th Cir. 2001). Defendants contend that Plaintiff has made only conclusory allegations and has "not alleged facts sufficient to establish that Defendants' actions reflect invidious discrimination." Doc. 30, p. 15.

Plaintiff has averred that although Hebrew Israelite inmates were not provided with an unleavened meal, "the Jewish inmates Passover and the Muslim inmates holy month of Ramadan [were]" were given religious meals. *Id.*, at 6. Plaintiff's affidavit presents evidence that the "faith-meal binder" contained meal provisions for the Jewish Passover. Doc. 57, p. 2. It is not known to what extent these meals are the same or similar to the unleavened meal sought by Plaintiff, but Plaintiff has presented evidence that he would have accepted a Jewish Passover meal. Considered in a light most favorable to Plaintiff, this is enough to show a triable equal protection claim. Summary judgment should be denied on the Equal Protection claim.

**Qualified Immunity**

Defendants contend that Plaintiff fails to demonstrate that Defendant violated a clearly established right and, therefore, they are entitled to qualified immunity. Doc. 30, p. 19. Since Plaintiff is not entitled to seek compensatory damages of any sort, there is no need to address this defense.

**Eleventh Amendment Immunity**

Likewise, since monetary damages are precluded in this case, the court need not address the Eleventh Amendment immunity of Defendants from an award of compensatory damages in their official capacities.[3] The Eleventh Amendment, however, is not a bar to injunctive relief. Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). *See* Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997) (reaffirming that prospective relief may be sought against a state official in federal court).

**Whether Plaintiff may pursue injunctive relief**

Defendants contend that there is no longer an Article III case or controversy with respect to injunctive relief because Plaintiff does not face a "real and immediate" threat of future injury. Defendants note that in 2006, food service was instructed to prepare vegetarian trays for Hebrew Israelites during Passover and the Feast of Unleavened Bread. Doc. 30, p. 21. Defendants assert that, as a consequence, any need for injunctive relief is moot. *Id.*, at 22-23.

Plaintiff, on the other hand, contends that providing a vegetarian meal for the Feast of Unleavened Bread and the Passover in 2006 "does not explain why Defendants" did not do so in 2005 when he requested it. Plaintiff is concerned that

---

[3] Plaintiff agrees that it is well established that the Eleventh Amendment is an absolute bar to a § 1983 suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. Doc. 56, p. 8. This is true. Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974).

without injunctive relief, Defendants have not shown that they will continue to follow this 2006 memorandum and could return to the way things had been in 2005.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), *cited in* Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-181, 120 S.Ct. 693,704 (2000). In Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983), the Court held "that the plaintiff lacked standing to seek an injunction against the enforcement of a police chokehold policy because he could not credibly allege that he faced a realistic threat from the policy." Friends of the Earth, Inc., 528 U.S. at 184, 120 S.Ct. at 706, *explaining* Lyons, 461 U.S., at 107, n.7, 103 S.Ct. 1660.

Voluntary cessation of the challenged practice while a lawsuit is pending does not provide the necessary foundation to demonstrate that the issue is moot.

> It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite, 455 U.S., at 289, 102 S.Ct. 1070. "[I]f it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' " *Id.*, at 289, n.10, 102 S.Ct. 1070 (citing United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." United States v.

> Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Id.*

Friends of the Earth, Inc., 528 U.S. at 189, 120 S.Ct. at 708 (emphasis added).

Plaintiff is serving a life sentence. He can be expected to have an annual need to be served an unleavened meal during the Hebrew Israelite holy days. While the March 30, 2006, memorandum by Defendant Medaris allowed Hebrew Israelite inmates to choose the vegan diet or alternate meal tray if desired during the holy days, a policy from a chaplain at one particular prison is not on the same footing as an official policy to enable Plaintiff to exercise his religious beliefs at any Florida prison to which he may be transferred in the future. Defendants urge that Plaintiff should resolve any obstacles "in observing his holy days in the future" through the grievance procedure, but Plaintiff did not obtain relief through the grievance procedure in 2005. Consequently, Defendants have not met their burden of showing that it is absolutely clear that the wrong will not occur again in the future. Summary judgment as to injunctive relief should be denied.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendants' motion for summary judgment, doc. 30, be **GRANTED in part**, and summary judgment be granted in their favor as to all claims for monetary relief, that in all other respects, the motion **be DENIED**, and the case be **REMANDED** for further proceedings before a trial is set.

**IN CHAMBERS** at Tallahassee, Florida, on August 2, 2007.

**s/ William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**